STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 08-718


JOHNETTE WILCZEWSKI

VERSUS

BROOKSHIRE GROCERY STORE


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 07-04536
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Billy Howard Ezell, and J. David Painter, Judges.

**AFFIRMED.**

Dale G. Cox
Lemle & Kelleher, LLP
401 Edwards St.
Shreveport, LA 71101-0000
(318) 227-1131
Counsel for Defendant/Appellant:
Brookshire Grocery Store

Joseph Payne Williams
Williams & Williams
Post Office Box 15
Natchitoches, LA 71458-0015
(318) 352-6695
Counsel for Plaintiff/Appellee:
Johnette Wilczewski

**SAUNDERS, Judge.**

This is a workers compensation case wherein an employee was injured while lifting a crate of hams weighing approximately fifty to sixty pounds. The employee claimed to have suffered an injury and, subsequently, pain in the thoracic area of her back.

After undergoing several unsuccessful treatments, the employee was seen by a pain management specialist. The specialist, after failed treatments via prescription drugs and epidural steroid injection, sought the approval of a trial using a spinal cord stimulator. The employer denied this request and sent the employee to its own medical experts who disagreed with the employee's pain management specialist about the trial spinal cord stimulator. The employee then saw a independent medical examiner regarding the thoracic pain who disagreed with both the employee and the employer's physicians about the source of the employee's pain and how it should be treated.

The employee filed a disputed claim for compensation seeking approval of the spinal cord stimulator. In the meantime, during the course of treatment, the employee's pain management specialist became concerned for the employee's mental health and sent her to a psychologist. The psychologist recommended a behavioral pain management program. The employer denied this request and sent the employee to its own physicians who did not address whether the employee needed the program.

The workers' compensation judge ruled in favor of the employee receiving the trial of the spinal cord stimulator and the behavioral pain management program. Further, he also awarded the employee penalties and attorney's fees for the employer's refusal to approve each. The employer has appealed, alleging nine assignments of error. We find no merit to any of the assignments and affirm the

workers' compensation judge's ruling in its entirety.

AFFIRMED.

**FACTS AND PROCEDURAL HISTORY:**

On December 22, 2005, Johnette Wilczewski (Wilczewski) claimed that she injured her mid-back when she lifted a case of hams while working for Brookshire Grocery Company (Brookshire). Unloading the boxes of hams, which weighed approximately fifty to sixty pounds, was a normal part of her regular duties in the meat market department for Brookshire.

Within twenty-four hours, Wilczewski saw her family physician, Dr. James Knecht, complaining of mid-back pain. Dr. Knecht's nurse took a history from Wilczewski wherein she indicated that she has suffered from back pain for about the last twenty-four hours, and, further, that she has suffered pain from her left arm, wrapping around her back for the last month. Dr. Knecht testified that the wrapping-around pain was not related to the work incident, but the posterior mid-back pain was due to her accident citing objective findings of muscle spasm.

Dr. Knecht continued to see Wilczewski into January of 2006. He referred her for physical therapy where a TENS unit was prescribed to help with the pain in her thoracic spine. Due to continued pain, Dr. Knecht referred her to an orthopedic specialist, Dr. Phillip Bacilla.

Dr. Bacilla ordered an MRI of Wilczewski's thoracic and lumbar spine as well as a bone scan. He interpreted an MRI and bone scan of Wilczewski's thoracic spine to be normal, but noted the MRI of the lumbar spine showed a bulging disc at L2-3 and L3-4. Dr. Bacilla felt that the bulges could be causing some of the pain in her upper lumbar region, but did not explain the pain in the thoracic region that radiates

2

to the chest. He then referred her to Dr. Melanie Firmin, a pain management specialist, with Wilczewski to return to his office after seeing Dr. Firmin. Dr. Bacilla did not see Wilczewski again until February 2007, wherein he suggested she be seen by a neurosurgeon.

Dr. Firmin, a board certified anesthesiologist and pain management specialist, began treatment of Wilczewski in April of 2006 with various types of neuromodulator and anti-depressant medication in an attempt to discover the source of the thoracic pain. Dr. Firmin's treatment progressed to a thoracic spine epidural steroid injection. That injection temporarily relieved Wilczewski's pain, and also showed an immediate change in the discoloration pattern on the thoracic area of her spine. This lead Dr. Firmin to believe that a trial of a spinal cord stimulator would assist in both diagnosing the actual problem that Wilczewski had and in determining if a permanent spinal cord stimulator would be of any benefit. Given the unusual nature of this potential diagnosis, Dr. Firmin sought a second opinion of her idea to use the trial spinal cord stimulator from Dr. Steven A. Staires, an interventional pain management specialist.

Dr. Staires saw Wilczewski and wrote a report to Dr. Firmin with the results of his consultation. In the report Dr. Staires indicated that he did see signs of exaggeration of symptoms for secondary gain or desire to convince others of the seriousness of her plight. His impression was that Wilczewski suffered from chronic thoracic pain syndrome and possible complex regional pain syndrome in the thoracic spine. Further, Dr. Staires stated that he clearly saw no contraindication to the trial of the spinal cord stimulator that Dr. Firmin was considering recommending.

Eddie Crawford, the adjuster working on the workers' compensation claim

filed by Wilczewski, received a copy of this report written by Dr. Staires. As a result of the findings by Dr. Staires, Dr. Firmin testified that her office requested the trial of the spinal cord stimulator in October of 2006. Eddie Crawford testified that he received no such request from Dr. Firmin's office, but he did remember getting the request in October, but was not sure whether it was October of 2006 or 2007.

In February of 2007, per the recommendation of Dr. Bascilla's office that Wilczewski see a neurosurgeon, Wilczewski obtained Brookshire's approval to see Dr. Cavanaugh. She did not see him and instead saw Dr. Anil Nanda, a neurosurgeon.

Dr. Nanda saw Wilczewski for two visits. On the first visit, he reviewed the MRI of her lumbar spine. He also saw the disc bulges at L2-3 and L3-4. He then requested a myelogram/CT with flexion and extension of her lumbar spine to better evaluate the area. In the second visit, he read the results of the myelogram/CT to show moderate lumbar stenosis for L2 to L4, but he did not feel the films were dramatic. He did suggest that, should Wilczewski not improve, he would recommend a laminectomy from L2 to L4. In the two visits, Dr. Nanda noted the redness of Wilczewski's back but attributed it to excessive use of a heating pad.

At Brookshire's request, Wilczewski saw Dr. Karl Bilderback, an orthopedic surgeon. Dr. Bilderback saw her one time and concluded that she was at maximum medical improvement. Further, he found no objective finding to support Wilczewski's complaints of thoracic pain. He opined that there was no reason for a spinal cord stimulator, that she was magnifying her symptoms, and that she could return to work without restrictions. With regards to the redness of Wilczewski's back, Dr. Bilderback did not have any particular diagnosis and felt it would be helpful for Wilczewski to see a dermatologist.

Brookshire then requested Wilczewski to see Dr. Phillip Bergeron, a dermatologist. He concluded that the redness of her back was the result of prolonged use of a heating pad.

At Brookshire's request, Wilczewski saw Dr. Keven Pauza, a spine specialist for an independent medical evaluation. Dr. Pauza's opinion was that Wilczewski was cooperative, honest and forthright in her evaluation. He concluded the following:

- No objective evidence of thoracic or lumbar radiculopathy.

- He strongly disagreed with Dr. Nanda's suggestion for a possible laminectomy.

- Wilczewski did not benefit from the epidural steroid injection performed by Dr. Firmin because of the normal MRI of the thoracic spine.

- No evidence of reflex sympathetic dystropy.

- No indication for a spinal cord stimulator.

- The most likely diagnosis was chemical pain originating from a torn thoracic intervertebral disc or a torn thoracic facet joint capsule or a combination of the two.

- It was safe for Wilczewski to return to work should with restrictions on how she lifts.

- Wilczewski needed and he prescribed her Norco for pain.

Wilczewski also saw Dr. Renee Culver, a psychiatrist. Dr. Culver concluded that Wilczewski was either suffering from a pain disorder associated with psychological factors or factitious disorder, or that she was malingering.

For the duration of these treatments, Dr. Firmin was still seeing Wilczewski even though she never received approval for the trial of the spinal cord stimulator. She referred her to Dr. James W. Quillin, a psychologist, in order to help Wilczewski

with any mental aspect of dealing with her pain. Dr. Quillin diagnosed her with depression secondary to chronic pain. He recommended and requested authorization from Brookshire for a behavioral pain management program. Brookshire denied this request.

Rather, Brookshire sent Wilczewski to be seen by Dr. Darren M Strother, a psychologist. Dr. Strother diagnosed Wilczewski with malingering, pain disorder associated with psychological factors, and mood disorder.

Dr. Firmin continued to see Wilczewski, but she decided it would not be in Wilczewski's best interest if she were to continue to see her in November of 2007. Dr. Firmin ceased treating Wilczewski due to Brookshire's refusal to approve her recommendation that they attempt a trial of a spinal cord stimulator.

On June 11, 2007, the Plaintiff filed a 1008 against Brookshire seeking approval of the spinal cord stimulator and eventually evidence was allowed to be heard regarding the behavioral pain management recommended by Dr. Quillin. After a trial on the merits, the workers' compensation judge (WCJ) ruled that Wilczewski had proven that the trial of the spinal cord stimulator as well as the behavioral pain management program were reasonable and necessary for treatment of the work-related injury she suffered.

Additionally, the WCJ awarded Wilczewski penalties and attorney's fees for Brookshire's failure to reasonably controvert the requested cord stimulator and pain management program. In a very through reasons for ruling, the WCJ opined that Brookshire had failed in its duty under La.R.S. 23:1201 when it denied the requested treatments by selectively focusing on parts of physician's reports that tended to help its position rather than by considering the totality of the reports and following

6

through with its statutory duty.

Brookshire has appealed the WCJ's judgment. It is alleging the following nine assignments of error:

**ASSIGNMENTS OF ERROR:**

1.  The WCJ erred in finding that Wilczewski proved her December 22, 2005, accident caused her to suffer a specific medical condition.

2   The WCJ erred in awarding Wilczewski judgment for the trial of a spinal cord stimulator.

3.  The WCJ erred in placing the burden of proof on Brookshire to prove that Wilczewski did not suffer from a medical condition that justified the recommended treatments.

4.  The WCJ erred in failing to require Wilczewski to prove that she suffered from thoracic reflex sympathetic dystrophy to obtain the trial of the spinal cord stimulator.

5.  The WCJ erred by misapplying the law regarding the admissibility of expert opinion.

6.  The WCJ erred in placing the greatest weight on the opinion of Dr. Melanie Firmin, and rejecting the opinions of the other physicians.

7.  The WCJ erred in awarding Wilczewski judgment for a program of behavioral pain management.

8.  The WCJ erred in awarding Wilczewski penalties and attorney's fees for Brookshire's failure to approve the trial of the spinal cord stimulator.

9.  The WCJ erred in awarding penalties and attorney's fees for Brookshire's failure to approve the behavioral pain management program.

**ASSIGNMENT OF ERROR #1:**

Brookshire alleges that the WCJ erred in finding that Wilczewski proved her December 22, 2005, accident caused her to suffer a specific medical condition. We find this assignment lacks merit.

Whether a claimant proves that a work-related accident caused an injury is factual in nature and, thus, a finding of fact. The applicable standard of review for a

finding of fact, that of manifest error, is set out in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. In *Banks*, our Louisiana Supreme Court stated:

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Id.* at 556 (citations omitted)(alteration in original).

Brookshire argues that Wilczewski lacked credibility. As such, it claims that she cannot be found to have carried her burden of proving that she suffered a work-related injury by her testimony alone. Brookshire's argument regarding Wilczewski's credibility is unfounded.

Wilczewski's testimony that she suffered an accident at work that caused her to have pain is corroborated by the testimony of her family physician, Dr. James Knecht. Wilczewski went to see Dr. Knecht the day after the accident and told him that she had been suffering mid back pain for approximately twenty-four hours. Further, the following exchange occurred during Dr. Knecht's deposition:

Q    So I want to make sure I understand. In your opinion the pain in the anterior chest wall was probably related to the pleurisy or the --

A    Costal chondral junction. Yes, sir.

Q    Costal chondral junction syndrome. And the pain in the mid back was probably related to the trauma that [Wilczewski] described to you?

A    Yes, sir. The accident. The injury.

Q    And the objective symptom you found was spasm in the mid back?

A    Spasm on the paraspinal muscles in the thoracic spine and also she was quite tender over that areas, yes, sir, on palpation. That's correct.

Given this testimony, we cannot find that Wilczewski's testimony was the sole source for the WCJ to find that she carried her burden of proof. As such, Brookshire's argument in this regard must fail.

**ASSIGNMENT OF ERROR #2:**

Brookshire alleges that the WCJ erred in awarding Wilczewski judgment for the trial of a spinal cord stimulator. We disagree.

As in assignment of error #1, the standard of review is that of manifest error. Brookshire points out that there was evidence that indicated that Wilczewski did not suffer any injury necessitating the trial of a spinal stimulator. This argument is not pertinent to a manifest error review. The question is not whether there was evidence that hindered Wilczewski's claim, rather, the question is whether there was sufficient evidence to support the WCJ's ruling to make that ruling reasonable.

After throughly reviewing the record, we find that there is ample evidence that Wilczewski had a work-related accident that caused her to suffer a medical condition that gave rise to the need for the trial of a spinal cord stimulator. The source of that evidence is in the testimony of Dr. Melanie C. Firmin.

Dr. Firmin was offered by Wilczewski as an expert in the field of medicine with specializations in anesthesiology and pain management. She saw Wilczewski from April of 2006 through November of 2007. Dr. Firmin first tried prescription medication and steroid injections. After these attempts provided only temporary or no relief to Wilczewski, Dr. Firmin sought find the source of Wilczewski's pain and

9

a way to treat it. Dr. Firmin reached the point where she recommended a trial of spinal cord stimulation as evidenced by the following:

> Q Okay. And so what was your though at this point after you've gotten her seen by Dr. Staires, and she comes back to you, what do you recommend?
>
> A I mean, my next thought process is to try to get a trial stimulation. A trial stimulation is a diagnostic tool. If you get a good result, then you determine the level of the result, and you determine is it reasonable to go forth with a permanent placement. A trial stimulation may reveal no therapeutic benefit. At that point, you pull the trial out, and you try again.

This testimony makes the WCJ's finding that Wilczewski carried her burden of proving that she was entitled to judgment for the trial of a spinal cord stimulator. Accordingly, we find no error with the WCJ's decision in this regard.

**ASSIGNMENT OF ERROR #3:**

Brookshire next contends that the WCJ erred in placing the burden of proof on it to prove that Wilczewski did not suffer from a medical condition that justified the recommended treatments. This contention is without merit.

Brookshire cites in brief the WCJ's reasons for judgment for its contention that the burden of proof was shifted to it. This court's review of the cited material, and record as a whole, reveals no such shift was made by the WCJ. Rather, it is quite clear that the WCJ placed the burden of proof on the proper party, Wilczewski, regarding the spinal cord stimulator when it stated the following:

> I reviewed several cases in making a conclusion with regard to Ms. Wilczewski's claim, that is whether or not the spinal cord stimulator proposed by Dr. Firmin is reasonable and necessary. Of course, we all know that the injured worker must establish medical testing is reasonably necessary for a diagnostic purpose.

Moreover, it is also clear that the WCJ did not shift the burden to Brookshire with regard to the behavioral pain management program it awarded to Wilczewski when it stated, "[t]he Court, therefore, believes that Ms. Wilczewski has proven by a

preponderance of the evidence that she is entitled to the pain management program recommended by Dr. Quillin."

As such, we find that Brookshire's claim that the WCJ improperly shifted the burden of proof to it completely unsubstantiated. The record reveals no such shift was made by the WCJ.

**ASSIGNMENT OF ERROR #4:**

Brookshire next puts forth the argument that the WCJ erred in failing to require Wilczewski to prove that she suffered from thoracic reflex sympathetic dystrophy to obtain the trial of the spinal cord stimulator. This argument is baseless.

Louisiana Revised Statutes 23:1203(A) states:

In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. Medical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs.

Our reading of La.R.S. 23:1203 does not necessitate that a claimant need prove a specific diagnosis in order to obtain medical treatment. This court, in *Gibson v. Shaw Global Energy Services*, 04-547, p. 8 (La.App. 3 Cir. 10/27/04), 885 So.2d 707, 713, *writ denied*, 04-2920 (La. 2/4/05), 893 So.2d 876, succinctly describes what La.R.S. 23:1203 requires of an employer with regards to paying for medical treatment when it stated:

La.R.S. 23:1203(A) requires an employer to provide all necessary medical treatment stemming from an employee's work-related injury. *See Schindler v. Orleans Reg'l Sec.*, 03-522 (La.App. 4 Cir. 12/3/03), 862 So.2d 1032. To recover medical expenses under La.R.S. 23:1203, the claimant must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. *Id.* In addition, an injured employee may recover expenses for medically necessary diagnostic tests

recommended by his treating physician when needed to ascertain the appropriate course of treatment. *McCrary v. New Orleans Health Corp.*, 01-1632 (La.App. 4 Cir. 9/26/01), 798 So.2d 1085.

Brookshire argues in brief that Wilczewski "must prove by a preponderance of the evidence that her accident caused a *specific* medical condition for which the requested treatment is needed." (Emphasis added.) Brookshire cites no authority for its position. Perhaps no authority is cited because any such authority, and such does not exist to this court's knowledge, would be inapplicable for the case *sub judice*.

At its root, Brookshire's contention is that Wilczewski needs to prove that she actually had a specific medical condition before it would be responsible for a diagnostic test deemed necessary by her treating physician. This argument is flawed. Clearly, a claimant cannot prove the existence of a specific condition prior to being tested to determine if that claimant has that condition.

As such, we uphold the WCJ's judgment related to this issue. Wilczewski had no duty to prove that she suffered from a specific medical condition, here namely thoracic reflex sympathetic dystrophy, in order for her to receive a trial of the spinal cord stimulator.

**ASSIGNMENTS OF ERROR #5 and #6:**

Brookshire claims that the WCJ erred in misapplying the law regarding the admissibility of expert opinion and in placing the greatest weight on the opinion of Dr. Melanie Firmin and rejecting the opinions of the other physicians. We do not agree.

The trier of fact has broad discretion when choosing to give greater weight to the testimony and opinion of one medical expert over another. *Pendleton v. Barrett*, 97-570 (La.App. 3 Cir. 12/23/97), 706 So.2d 498. Generally, the opinion and testimony of a treating physician should be given greater weight that those of a

physician that merely saw the patient for the purpose of diagnosis. *Winch v. Double M, Inc.*, 99-1793 (La.App. 3 Cir. 4/5/00), 764 So.2d 1055, *writ denied*, 00-1271 (La. 6/16/00), 765 So.2d 339.

Brookshire first argues that the WCJ erred in placing great weight on the testimony of Dr. Firmin and rejecting the testimony of the numerous doctors who examined Wilczewski. Brookshire supports its argument by pointing out that Dr. Firmin admitted that she had never treated a case of thoracic reflex sympathetic dystrophy and that she had never implanted a spinal cord stimulator to treat thoracic pain.

Brookshire's assertions regarding Dr. Firmin's experience are technically accurate. However, these assertions are weakened by the fact that Dr. Firmin has treated several cases of reflex sympathetic dystrophy in both the lumbar and cervical parts of the spine. Moreover, Dr. Firmin has implanted a spinal cord stimulator into both of those other areas of the spine. Given the great latitude afforded to the trier of fact when conflicting expert medical opinions are expressed, we cannot find that the WCJ's reliance on Dr. Firmin's testimony was unreasonable given that Dr. Firmin saw Wilczewski more than any other physician whose opinion was put forth by Brookshire.

Brookshire next argues that the WCJ erred in misapplication of the standard concerning the admission of expert testimony, citing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786 (1993). Brookshire contends that because Dr. Firmin had never treated, nor was there any literature available on, thoracic reflex sympathetic dystrophy, the WCJ should have not have accepted Dr. Firmin's opinions.

As noted above, while it is true that Dr. Firmin had not ever treated thoracic

13

reflex sympathetic dystrophy, she had treated reflex sympathetic dystrophy in both the cervical and lumbar areas of the spine. Further, "when the objecting party fails to request a *Daubert* hearing, objections to the admissibility of an expert witness's testimony under *Daubert* are not preserved for appeal." *Brown v. Schwegmann*, 05-830, p.6 (La.App. 4 Cir. 4/25/07), 958 So.2d 721, 724, *writ denied*, 07-1094 (La.9/21/07), 964 So.2d 333 (*citing State v. Pickett*, 03-1492 (La.App 3 Cir. 5/26/04), 878 So.2d 722).

Here, while Brookshire did object during Dr. Firmin's deposition and preserved those objections when the deposition was entered into the record at trial, at no point did it request a *Daubert* hearing. As such, we cannot make a determination of Dr. Firmin's status under *Daubert* for the first time on appeal.

Additionally, as the WCJ pointed out several times, the issue in the case was not whether Wilczewski actually had thoracic reflex sympathetic dystrophy, the issue is whether it was reasonable and necessary that she would benefit either diagnostically, or by obtaining relief, or both, from the trial of the spinal cord stimulator. As such, whether Dr. Firmin had ever treated anyone with reflex sympathetic dystrophy to that particular area of the spine is not of the utmost pertinence.

Accordingly, we find that Brookshire's contentions raised in these two assignments to be without merit. The WCJ was well within the discretion given to a trier of fact in weighing expert testimony.

**ASSIGNMENT OF ERROR #7:**

Brookshire asserts that the WCJ erred in awarding Wilczewski judgment for a program of behavioral pain management. We do not agree.

Whether Wilczewski carried her burden to prove that she was entitled to the

pain management program is factual in nature. Therefore, the standard of review in this assignment will again be that of manifest error as expressed in assignment of error #1.

The sole medical opinion as to whether Wilczewski needed a behavioral pain management program was given by Dr. James W. Quillin, Wilczewski's treating psychologist. He found that she had depression secondary to her chronic pain and that a behavioral pain management program could benefit her with both her pain and depression.

Brookshire points out that when Dr. Renee Culver, a psychiatrist, reviewed Wilczewski's records and performed a psychiatric evaluation, part of her diagnosis was possible malingering. Brookshire also points out that other physicians felt that Wilczewski was either malingering or greatly exaggerating her symptoms for secondary gain. These arguments are unconvincing.

Dr. Culver's actual diagnosis included three possibilities: (1) pain disorder associated with psychological factors; (2) factitious disorder; or (3) malingering. Brookshire's argument regarding Dr. Culver is curious as Dr. Culver did not discuss any recommendation relative to a pain management program or depression. Rather, Brookshire avers that Dr. Culver's report helps to show that Wilczewski did not prove that she was injured at work. Thus, according to Brookshire, Dr. Quillin's diagnosis that she needed the pain management secondary to that initial work injury was clearly incorrect. We have already concluded in assignment of error #1 that the WCJ's finding that Wilczewski suffered a work-related injury was reasonable. Thus, this argument by Brookshire must fail.

Given the above, it is clear that the WCJ's decision to find that Wilczewski was entitled to a program of pain management was very reasonable. As such, we uphold

15

his ruling in this regard.

**ASSIGNMENTS OF ERROR #8 and #9:**

Finally, Brookshire argues that the WCJ erred in awarding Wilczewski penalties and attorney's fees for Brookshire's failure to approve both the trial of the spinal cord stimulator and the behavioral pain management program. These arguments are without merit.

An employer is subject to penalties and attorney's fees should it fail to reasonably controvert an employee's claim. La.R.S. 23:1201(F); *See also Leger v. A-1 Nursing Registry*, 98-1731 (La.App. 3 Cir. 4/28/99), 737 So.2d 142, *writ denied*, 99-1555 (La.9/24/99), 749 So.2d 633. The standard of review for whether penalties and attorney's fees were appropriately assessed in a workers' compensation case is that of manifest error. *See Bennett v. Pilgrim's Pride*, 07-753 (La.App. 3 Cir. 12/12/07), 972 So.2d 423, *writ denied*, 08-103 (La. 3/7/08), 977 So.2d 907.

When discussing the issue of penalties and attorney's fees, the WCJ stated the following:

> [T]he employer, from it's own physician's reports, wanted to pick and choose those items which seemed to be favorable to itself without comparing those amongst themselves and seeing if they were even consistent or inconsistent. The depositions were not taken until shortly before this trial occurred in February of 2008 despite the fact the litigation was pending since June of 2007. The reports were in everybody's hands at least by September of 2007. There was ample time to go all the way to . . . having noted all the inconsistencies in their own records and their own findings, and trying to find - - because it's the duty of the employer to investigate to find out what is going on, what is a medical condition, is there a medical condition and how do you get it diagnosed and how do you get it treated, and this they stopped short of doing by simply relying on the inconsistent reports and conclusions of the physicians in September of 2007, not going all the way.

After reviewing the record, we agree with the WCJ. Dr. Firmin testified that she requested the spinal cord stimulator in October of 2006 after first receiving a letter from Dr. Steven K. Staires dated August 16, 2006. Dr. Firmin sent Wilczewski

16

to Dr. Staires, an interventional pain management specialist, for a second opinion because she was attempting to bolster her opinion that Wilczewski may benefit from trial use of a spinal cord stimulator in the thoracic spine. Eddie Crawford, the adjuster on Wilczewski's claim, testified that he was sure he got the request in October, but was not sure if it was in October of 2007 or 2006. However, Crawford did admit to receiving a copy of Dr. Staires' letter. In Dr. Staires' letter he wrote his impressions about chronic thoracic pain syndrome and possible complex regional pain syndrome, thoracic spine. Dr. Staires' letter further went on to read, "[r]ecommendations in view of the patient's chronicity and severity of symptoms, as well as her poor response to medication and other interventional treatments, I clearly see no contraindication to a trial of spinal cord stimulation with leads placed in the mid thoracic area."

This evidence supports the WCJ's position that Brookshire knew of the requested spinal cord stimulator in October of 2006, had ample time to investigate the matter, yet did not perform its statutory duty. As such, we uphold the award of penalties and attorney's fees related to the trial of the spinal cord stimulator.

Moreover, we also uphold the WCJ's decision to penalize and award attorney's fees on the denial of the behavioral pain management program. Dr. Quillin was the only expert medical evidence presented about whether Wilczewski needed this treatment. Brookshire attempted to hinge its denial of the pain management program on its belief that Wilczewski suffered no work-related injury and on the reports it received from evaluations made in preparation for litigation that did not even address the reasonableness of a behavioral pain management program. This is clearly a shirking of its duty to provide Wilczewski all reasonable and necessary medical care for her injury. Accordingly, we dismiss these assignments as without merit and uphold the WCJ's ruling in this regard.

**ANCILLARY MATTER:**

Wilczewski has asked that we award attorney's fees for work performed on appeal. We think that the resolution of this case warrants such an award.

Generally, when an award for attorney's fees is granted at the trial level, additional attorney's fees are proper for work done on appeal. This is to keep the appellate judgment consistent with the underlying judgment. *See Bennett*, 972 So.2d 423.

We have reviewed the appellate record and note that counsel for Wilczewski has successfully defended her award given by the WCJ, in its entirety. Given this fact, coupled with the number of issues Brookshire raised, we award $3,500.00 for work done on this appeal.

**CONCLUSION:**

Brookshire raised nine assignments of error. We found that all assignments lack merit. As such, we affirm the WCJ's judgment. Further, we award Wilczewski $3,500.00 in attorney's fees for work done on this appeal. All costs of this proceeding are assessed to Brookshire.

**AFFIRMED.**