# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1002

**BONNIE JEANNE CARRET DEROUEN, IN HER CAPACITY AS TRUSTEE, ET AL.**

**VERSUS**

**ADEL JAAFAR MALAHMEH, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 113281
HONORABLE JAMES RAY MCCLELLAND, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Calvin Theodore Guidry**
**Attorney at Law**
**405 West Main St.**
**Lafayette, La 70501**
**(337) 232-6183**
**Counsel for Plaintiff Appellee:**
**Bonnie Jeanne Carret Derouen, Trustee**
**Isadore J. Carret**
**Bonnie Jean Jones Carret, Trust**

**Frank Edward Barber**
**Attorney at Law**
**116 Field St.**
**New Iberia, LA 70560-4487**
**(337) 256-8370**
**Counsel for Defendants/Appellants:**
**Adel Jaafar Malahmeh**
**Asma Mohammad Al Daoud Malahmeh**

**SAUNDERS, Judge.**

This is a case of a vendor/mortgagor filing suit against a mortgagee for the amount due under a promissory note. The mortgagee responded by alleging that the terms of the contract between the parties had been altered due to the customs of the business dealings so as to waive the mortgagor's right to late charges, that the mortgagor failed to timely pay to him the proceeds from an insurance claim, and that the mortgagor caused him mental damages in its collection practices.

The trial court found that the mortgagor was entitled to judgment to bring the promissory note up to date, inclusive of late charges, and dismissed the mortgagee's claim against the mortgagor for mental damages. The mortgagee appealed. We affirm.

**FACTS AND PROCEDURAL HISTORY:**

Adel J. Malahmeh and his wife, Asma M. Al Daoud Malahmeh (collectively Malahmeh), purchased immovable property from the Isadore J. Carret and Bonnie Jean Jones Carret Trust (the trust). Bonnie J. Derouen (Derouen) is the trustee of the trust. However, most of the actual dealings between Malahmeh and the trust were conducted with the other member of the trust, Isadore J. "Brother" Carret (Carret).

In the act of sale, the trust retained a mortgage and vendor's privilege on the property sold. The trust financed the transaction by allowing Malahmeh to pay for the property by making promissory notes. One of the notes, in the amount of $225,000.00, was payable over a seven-year period with a balloon payment due on the final day of the note. Other terms in the act of sale obligated Malahmeh to keep the property insured and to pay a late charge of five percent (5%) of the amount of any payment not received within ten days of the due date. After a few months, the parties agreed to change the terms of the agreement modifying the amount of the

payment and providing that payments were due on the fifteenth of each month.

Malahmeh habitually made untimely payments on the note. There is conflicting testimony in the record of whether the trust informed Malahmeh that the lateness of the payments was unacceptable and whether the trust warned Malahmeh that late charges would apply to the late payments. Additionally, Malahmeh failed to obtain insurance coverage on the property. Thereafter, the trust purchased a policy of insurance covering the property and, according to the members of the trust, intended to add the premiums paid by the trust to the end of the note.

During the term of the note, the property sustained damage via hurricane. Proceeds from an insurance claim filed were kept by the trust in a non-interest bearing account. Malahmeh repaired some a minimal amount of damage done to the property, for which he was reimbursed. However, the net insurance claim proceeds were still in excess of $11,000.00.

On December 5, 2008, the trust filed suit against Malahmeh for collection on the promissory note. Malahmeh responded by filing a reconventional demand for mental damages against the trust for Derouen's, as trustee, alleged harassing, demeaning, and belittling telephone call(s) she made in trying to collect on the note.

On October 19, 2009, a trial on the merits was held. A judgment was rendered by the trial court on November 2, 2009, that awarded the trust one hundred three thousand three hundred sixty-three dollars and forty cents ($103,363.40), together with interest thereon at the rate of five percent (5%) per annum from October 19, 2009, until paid. Further, the trust was awarded seven thousand, eleven dollars and fifty cents ($7,011.50) in attorney's fees. Malahmeh was assessed costs of the proceedings, and his reconventional demand was dismissed. Malahmeh appealed,

2

raising the following assignments of error:

**ASSIGNMENTS OF ERROR:**

1.    The trial court committed manifest error, in failing to determine that the balance of the promissory note was the amount indicated on the amortization schedules kept by Carret and in adding late charges to the calculation of the judgment, even though obligee of the promissory note had not charged Malahmeh the late charges.

2.    The trial court committed manifest error in failing to reduce the outstanding balance due on the promissory note by the amount of the insurance proceeds at the time the proceeds were received by the trust.

3.    The trial court committed manifest error in dismissing Malahmeh's claim for damages against the trust.

**ASSIGNMENT OF ERROR NUMBER ONE:**

Malahmeh asserts in his first assignment of error that the trial court committed manifest error in failing to determine that the balance of the promissory note was the amount indicated on the amortization schedules kept by Carret (Defendant's Exhibit 2) and in adding late charges to the calculation of the judgment, even though obligee of the promissory note, the trust, had not charged Malahmeh late charges when he made late payments. This assignment contains two assertions: that the trial court should have used Defendant's Exhibit 2 rather than Plaintiff's Exhibit 12; and that the trial court should not have added the late charges in its judgment awarded to the trust. We disagree with both assertions.

> In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Gradney v. La. Commercial Laundry*, 09-1465, pp. 2-3 (La.App. 3 Cir. 5/12/10), 38

So.3d 1115, 1118 (citations omitted) (internal quotation marks omitted).

The trial court was presented with two documents that arguably could indicate the amount Malahmeh owed the trust on the promissory note, Plaintiff's Exhibit 12 and Defendant's Exhibit 2. Malahmeh first argues that the trial court was in error in failing to use Defendant's Exhibit 2 to calculate the balance he owed on the promissory note. Carret testified that he created Defendant's Exhibit 2. He testified regarding the document as follows:

Q      I'm going to show you an amortization and ask if you recognize that.

A      Yes, I do.

Q      Can you tell us what that is.

A      It was an amortization and whenever [Malahmeh] would bring a payment, I would notate the date and the amount, and[,] as you notice, the amount was always a little short or always late.

. . . .

Q      Okay. So it's correct to say that as a payment was made you would simply note the date and the amount of payment.

A      Yes.

Q      So this is not a running total of what you viewed the debt to be at any particular point in time.

A      That's correct.

Further, when the trial court examined Carret, the following exchange took place:

4

Q     Am I correct that those amortization schedules were printed from an amortization program that shows the - - what the declining balance would be assuming the payments were made on time?

A     Yes, sir.

Q     Okay. And that's all the printed part means; is that correct?

A     That's correct.

Q     When you received the payments, did you make any effort to show what the declining, what the principal balance would actually be after the payments were received when they were late because the interest would be more and the principal would be less?

A     No, I said it was just way too much work. I just said, "[Malahmeh], start catching up. We're going to add this on the back end."

Q     All right. So basically[,] at some time there would be a reckoning and all those calculations would be made. That's what you told him.

A     That's what I tried to tell him, there would be reckoning.

It is clear from this testimony that Carret did not believe that Defendant's Exhibit 2 was a record of the declining balance that Malahmeh owed to the trust. The trial court chose to give credence to Carret's testimony, and that testimony provides a reasonable basis for the trial court to disregard Defendant's Exhibit 2 as the balance Malahmeh owed on the promissory note. *See Gradney*, 38 So.3d 1115. As such, Malahmeh's argument that the trial court was manifestly erroneous in failing to determine that the balance of the promissory note was the amount indicated on Defendant's Exhibit 2 kept by Carret is without merit.

Next, Malahmeh argues that the trial court should not have added the late

charges in its judgment awarded to the trust. He bases this argument on the assertion that the dealings between Malahmeh and Carret established a custom or practice of Malahmeh making late payments without being charged late charges, and that these customs modified the original agreement so as to have the trust give up its right to seek any late charges due. To support his assertion, Malahmeh cites the following language from *First National Bank v. Higgs*, 406 So.2d 673, 675 n.1 (La.App. 2 Cir. 1981) (citations omitted)(emphasis added):

> Forebearance is a circumstance which can give rise to estoppel. Forebearance exists when a creditor acquiesces in or tolerates substandard performance of an obligation by the debtor without exercising his rights to enforce the obligation, thereby implying that such conduct is sufficient.
>
> When forebearance reaches the level of equitable estoppel the creditor will be barred from suddenly demanding strict performance in order to avoid injustice to the debtor. However, the creditor's mere acquiescence or forebearance by not using all of his rights*, when accompanied by protest or complaints to the debtor,* does not rise to the level of estoppel which will later bar the creditor from using those rights to enforce the obligation.

In this regard, Carret, who primarily dealt with Malahmeh in paying the note, testified as follows:

Q  Did you have discussion with [Malahmeh] regarding the timeliness of his payments?

A  Every time he paid late, I said, "[Malahmeh], try to be on time and try to make it for the proper amount." That's about the length of the discussion.

Q  Did you ever tell him that late payments were acceptable?

A  No.

Q  Did you ever tell him that payments in the amount other than the exact payment were acceptable?

A No, I did not.

Q Did you ever tell him that it was okay to pay every three months rather than every month?

A No.

Q Did you ever tell him that there would not be any late charges at the end of the note?

A No, I did not.

Q Did you have discussions with him about late charges?

A Yes, I told him it would be added on to the end of the bill.

Carret's testimony provides a reasonable basis for the trial court to have found that Malahmeh's claim of modification of the contract due to custom between the parties is without merit. Thus, we find no error in the trial court adding the late charges to the judgment awarded to the trust.

**ASSIGNMENT OF ERROR NUMBER TWO:**

Malahmeh next claims that the trial court committed manifest error in failing to reduce the outstanding balance due on the promissory note by the amount of the insurance claim proceeds at the time those proceeds were received by the trust on January 17, 2006. We disagree.

The trial court used Plaintiff's Exhibit 12 to reach its ultimate decision of what Malahmeh owed to the trust. Plaintiff's Exhibit 12 credited Malahmeh with the proceeds from the insurance claim from the date when suit was filed, December 5, 2008. Malahmeh points to no evidence in the record, nor does he cite any authority

7

for his position, so as to counter how Plaintiff's Exhibit 12 dealt with the issue of when the insurance claim proceeds would be credited to Malahmeh's ending balance owed on the promissory note. He merely states that the trial court should have used a different date, January 17, 2006, the date when the insurance claim proceeds were paid to the trust for the hurricane damage done to the property, to determine what amount was owed to the trust.

We find the facts surrounding the insurance issue raised to be enlightening. Carret testified that he informed Malahmeh that the insurance claim proceeds were available to reimburse any expenses that Malahmeh incurred in fixing the property. Carret also told Malahmeh that those proceeds would be dispersed to him when he either would pay to fix the property or have someone present the trust with a bid as evidence of what it would cost to fix the property. According to Carret, Malahmeh did neither.

Moreover, the contract between Malahmeh and the trust called for Malahmeh to obtain insurance coverage on the property. According to Carret, despite repeated requests from the trust that Malahmeh comply with that requirement, he never did so. Malahmeh's failure caused the trust to seek out insurance on its own. Certainly, had Malahmeh complied with the trust's request, he would have received the insurance proceeds at the time they were paid as the contract of insurance would have been between him and the insurance company. Thus, the party that caused Malahmeh not to receive the insurance proceeds on the date when they were paid by the insurance company was Malahmeh, himself, due to his failure to get insurance coverage on the property despite his agreement to do so and the trust's repeated requests for him to comply.

8

Accordingly, we find it reasonable for the trial court to have used the only calculation which it was presented on this issue and to have credited the insurance claim proceeds at the time suit was filed rather than when they were paid to the trust, especially in light of Carret's testimony that it was Malahmeh who failed to obtain insurance, seek out repairs or, at minimum, obtain an estimate of the cost of those repairs. Accordingly, this assignment of error lacks merit.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In his final assignment of error, Malahmeh contends that the trial court committed manifest error in dismissing his claim for damages against the trust. We find this assignment of error is baseless.

> Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.
>
> . . . .
>
> [W]here two permissible views of the evidence exist[], the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

*Stobart v. State*, 617 So. 2d 880, 882-33 (La.1993)(citations omitted).

Louisiana law provides that "debt collection efforts, if extreme and outrageous, will support recovery for intentional infliction of emotional distress." F. Maraist and T. Galligan, LOUISIANA TORT LAW, §§ 2-6(e), pp. 36-37, n. 83 (1996).

According to Malahmeh, his claim for damages stemmed from phone calls he allegedly received from Derouen wherein she stated that if he did not pay his note timely, "I guess we'll have to kick your ass out." According to the trial court, "that's not demeaning or abusive, that's pretty much the legal right that you may have if you

hold a mortgage on something, you can foreclose on the mortgage and evict the people that are involved."

The court passes no judgment on the propriety of the particularly colorful descriptive term that was allegedly used by Derouen towards Malahmeh. However, the record before us indicates that Derouen's alleged actions do not rise to a level of extreme or outrageous.

Moreover, there is conflicting evidence in the record whether Derouen actually used the language cited or even made the phone calls alleged by Malahmeh. Derouen testified that she absolutely did not use that language and called Malahmeh very few times over the course of their business dealings. Accordingly, we find no error in the trial court's dismissal of Malahmeh's claim for damages against the trust for mental distress.

**ANCILLARY MATTER:**

The trust has requested $2,500.00 in attorney's fees for work done on appeal. "Generally, when an award for attorney's fees is granted at the trial level, additional attorney's fees are proper for work done on appeal. This is to keep the appellate judgment consistent with the underlying judgment." *Wilczewski v. Brookshire Grocery Store*, 08-718, p. 18 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, 1226, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170. A review of work performed on appeal suggests that $2,500.00 in attorney's fees is reasonable. Accordingly, we grant this request and award the trust $2,500.00 in attorney's fees for work done on appeal.

**DECREE:**

Malahmeh raised three assignments of error. We found no error by the trial court in any of the assignments raised. Additionally, we granted the trust's request for

10

$2,500.00 in attorney's fees for work done on appeal.  All costs of this appeal are assessed to Malahmeh.

**AFFIRMED.**