# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-685

**ROBERTO LLOPIS, DDS, WENDY LLOPIS, AND LAFAYETTE COMPREHENSIVE AND URGENT DENTAL CARE, LLC**

**V.**

**KIMBERLY TOCE WALKER AND ALLYSON TOCE HOUSTON, INDEPENDENT EXECUTORS OF THE SUCCESSION OF WALDEMAR ORAN TOCE, JR.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2023-2897, DIVISION E
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**LEDRICKA J. THIERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Ledricka J. Thierry, and Guy E. Bradberry, Judges.

**AFFIRMED AS AMENDED.**

**Roshell Jones**
**Charlotte Bordenave**
**237 W. Main Street**
**New Iberia, LA 70560**
**(337) 255-8527**
**COUNSEL FOR PLAINTIFFS/APPELLANTS**
    **Roberto Llopis, DDS, Wendy Llopis, and Lafayette Comprehensive and**
    **Urgent Dental Care, LLC**

**Alan K. Breaud**
**Timothy W. Basden**
**Breaud & Meyers**
**Post Office Box 51365**
**Lafayette, LA 70505**
**(337) 266-2200**
**COUNSEL FOR DEFENDANTS/APPELLEES**
    **Kimberly Toce Walker and Allyson Toce Houston, Independent**
    **Executors of the Succession of Waldemar Oran Toce, Jr.**

**THIERRY, Judge.**

Plaintiffs purchased a dental practice from Waldemar Oran Toce, Jr., DDS and asserted that Dr. Toce intentionally damaged the goodwill of the practice following the sale. The executors of Dr. Toce's estate filed a motion for partial summary judgment, claiming that (1) Plaintiffs' claims were untimely under La.R.S. 23:921(B) and (2) judgment should be rendered against Plaintiffs due to their failure to pay the promissory note for the practice. The trial court granted the executors' motion for partial summary judgment, which Plaintiffs now appeal. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On November 1, 2018, Waldemar Oran Toce, Jr., DDS (now deceased) and his wife, Mary Hymel Toce, sold the assets of Dr. Toce's dental practice to Roberto L. Llopis, DDS, and his wife, Wendy Llopis. The promissory note specified a purchase price of $200,000.00 plus interest and set forth monthly minimum payments of $714.00, with the full balance due by October 31, 2033.

In consideration for the sale, Dr. Toce agreed not to compete with Dr. Llopis in the practice of dentistry. Dr. Toce also agreed to "not own, manage, or be employed by (whether as an employee or independent contractor) a competing dental practice," nor would he "recruit or employ (whether as an employee or independent contractor) any of the dental practice's current employees or independent contractors." Following the sale, Dr. Toce became an employee of Dr. Llopis's dental practice and continued seeing patients on a limited basis.

On July 16, 2020, Dr. Llopis hired another dentist, Dr. Melissa Dupree, DDS, to work at his dental practice, Lafayette Comprehensive and Urgent Dental Care,

LLC ("LCUDC"). She worked there until March 16, 2022, when Dr. Llopis terminated her employment.

On May 31, 2023, Dr. Llopis, his wife, and LCUDC (collectively, "the Llopises") filed a petition for damages against Kimberly Toce Walker and Allyson Toce Houston, as executors of the Succession of Waldemar Oran Toce, Jr. (collectively, "the Toces"). The Llopises allege that Dr. Toce agreed not to intentionally damage the goodwill of the practice, but he did so anyway and thus breached the November 1, 2018 sale. Specifically, the Llopises allege that between March 16, 2022 (the date Dr. Llopis terminated Dr. Dupree) and July 7, 2022 (the date of Dr. Toce's death), Dr. Toce called clients of LCUDC and encouraged them to leave LCUDC and instead treat with Dr. Dupree. They further allege:

> Before March 16, 2022, Dupree and TOCE would meet periodically and surreptitiously at Zea's Restaurant with other current employees of LCUDC to discuss and plan how Dupree would take over LCUDC from ROBERTO LLOPIS, DDS. Part of this planning included having Dupree print Open Dental reports that listed all of LCUDC's patients for the last three years that included patient addresses, birthdates, phone numbers, email addresses and dates of last visit. This proprietary information was used by Dr. Dupree and TOCE to open her new practice and fill it with former LCUDC patients, in breach of the contract executed by TOCE.

Ultimately, the Llopises claim that approximately 60% of their patients left LCUDC due to Dr. Toce improperly directing patients to leave LCUDC. Because of these actions, the Llopises allege that the Toces breached the November 1, 2018 sale, which entitled them to stop paying the $200,000.00 note and recover the amounts already paid towards the purchase price.

The Toces filed an answer and reconventional demand, asserting, in relevant part, that the Llopises defaulted on the $200,000.00 promissory note and owe the Toces the remaining amount due, plus attorney's fees.

2

Thereafter, the Toces filed a motion for partial summary judgment, asserting that (1) the Llopises' claims were untimely under La.R.S. 23:921(B) and (2) judgment should be rendered against the Llopises for the delinquent amounts owed pursuant to the promissory note. The motion was initially continued to allow for more discovery and was ultimately heard nearly a year later. The trial court granted the Toces' motion on June 24, 2024, dismissing the Llopises' claims against the Toces, holding that $143,883.81 is the outstanding principal balance of the promissory note and awarding attorney's fees in an amount determined in a subsequently presented fee affidavit.[1]

The Llopises now appeal the June 24, 2024 judgment relating to the Toces' motion for partial summary judgment. The Toces filed an answer to the appeal, asking for additional attorney's fees for work done on appeal.

## ASSIGNMENTS OF ERROR

The Llopises allege the following assignments of error on appeal:

1. The trial court committed manifest[] error when it held there was no genuine issue of material fact that Appellants' Petition for Damages was untimely based on the two (2) year prescriptive period concerning the sale of the goodwill of a business, as set forth in La. R.S. 23:921 (B).

2. The trial court committed manifest[] error when it held there was no genuine issue of material fact that Appellants defaulted on the promissory note executed for the sale of the dental practice, awarded a Judgment on the promissory note, and attorney fees.

## LAW AND ANALYSIS

The standard of review of a judgment denying or granting a summary judgment is de novo. *Perry v. Rhodes*, 20-109 (La.App. 3 Cir. 9/30/20), 304 So.3d

---

[1] The Toces' attorney, Alan K. Breaud, thereafter filed an Affidavit of Fees, and the trial court awarded attorney's fees in the amount of $58,046.34 in a separate judgment signed on November 20, 2024. The November 20, 2024 judgment is not at issue in this appeal.

3

1036. Accordingly, we use the same criteria as the trial court in determining whether summary judgment is appropriate. *Id.*

As set forth by La.Code Civ.P. art. 966(A)(2), "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action[.]" After an opportunity for adequate discovery has occurred, summary judgment must be granted if the motion and supporting documents "show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). If doubt exists regarding the existence of a material issue of fact, the matter "must be resolved against granting the motion and in favor of trial on the merits." *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459, 04-1460, 04-1466, p. 11 (La. 4/12/05), 907 So.2d 37, 48.

The burden rests on the mover. La.Code Civ.P. art. 966(D)(1). If, however, the mover will not bear the burden of proof at trial, then the mover is not required to negate all essential elements of the adverse party's claim. *Id.* Rather, the mover need only "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* The adverse party, in order to defeat the granting of summary judgment, must either prove the existence of a genuine issue of material fact, or prove that the mover is not entitled to judgment as a matter of law. *Id.*

Assignment of Error Number One

The issue in this assignment of error concerns the timeliness of Plaintiffs' claims that Dr. Toce intentionally damaged the goodwill of the company. In the November 1, 2018 sale and accompanying documents, Dr. Toce agreed not to compete with Dr. Llopis in the practice of dentistry and further agreed not to recruit any of the dental practice's employees or independent contractors. One of the assets

4

in the sale included the goodwill of the dental practice. As the sale documents explain:

> Both parties understand that this associated goodwill is based on the relationships developed over time between W.O. Toce, Jr., D.D.S. and his patients. Sellers will make all reasonable efforts to transfer the existing goodwill of the practice to the Buyers and will take no intentional actions that would damage his goodwill[.]

The selling of goodwill of a business is addressed in La.R.S. 23:921. In general, the Louisiana Legislature renders null and void any contract or provision "by which anyone is restrained from exercising a lawful profession, trade, or business of any kind[.]" La.R.S. 23:921(A)(1). However, there are several exceptions in which such a contract or provision is enforceable, including that under La.R.S. 23:921(B):

> Any person, including a corporation and the individual shareholders of such corporation, who sells the goodwill of a business may agree with the buyer that the seller or other interested party in the transaction, will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of sale.

In other words, the selling of the goodwill of a business, as is the case here, is an exception in which non-competition and/or non-solicitation provisions are permitted. However, such a prohibition is limited to two years from the date of the sale.

While the Llopises attempt to distinguish Dr. Toce's alleged intentional damage of goodwill from his alleged solicitation acts so as to render La.R.S. 23:921 inapplicable, neither the law nor evidence supports such an interpretation. Louisiana Revised Statutes 23:921 explicitly encompasses goodwill. Dr. Toce's alleged

5

damage of goodwill occurred precisely through his solicitation of LCUDC's patients; the two cannot be separated. Therefore, we find that La.R.S. 23:921 applies.

Because of the two year limit set forth in La.R.S. 23:921(B), the Toces argue that any non-competition or non-solicitation obligations imposed on Dr. Toce expired two years after execution of the November 1, 2018 sale agreement, which was November 1, 2020. Since the Llopises specifically allege in their petition that Dr. Toce engaged in competition and/or solicitation activity from March 16, 2022 through July 7, 2022, the Toces reason that any non-competition and/or non-solicitation claim is clearly expired.

However, the Llopises argue that, even if La.R.S. 23:921(B) does apply, there are genuine issues of material fact. They claim that the timing of when Dr. Toce "began to work with [Dr.] Dupree to undermine Appellants' dental practice" is uncertain. In fact, they suggest in their appellate brief that the meetings between Dr. Toce and Dr. Dupree could have taken place as early as July 16, 2020 (and thus within two years of the November 1, 2018 sale), when Dr. Dupree was first hired by LCUDC.

We are not persuaded by the Llopises' arguments. The Llopises presented no evidence to support such a suggestion when opposing the motion for partial summary judgment. Rather, the only evidence properly admitted and in the record shows that the alleged breach occurred well after the two year limitation set forth in La.R.S. 23:921(B). Even Dr. Llopis himself confirmed this in his deposition:

Q. How did [Dr. Toce] break the [November 1, 2018] sales agreement?

A. He contacted – after I terminated Dr. Dupree, he contacted a lot of patients and he advised them that he was going to be with Dr. Dupree and that he would appreciate if they would go over and switch dentists over to her and him.

6

Q. Okay. And that is why you felt that he violated the agreement and you stopped paying him?

A. That's a better word, "violated."

Q. I'm sorry?

A. That's a better work, break – "violated." I couldn't think of that word. But, yes, I do feel that he violated it because part of that purchase agreement, if you look into the sales agreement, was I purchased the goodwill of the – of Toce's relationship for 40 years with the patients that I was granted his goodwill that he provided, that was part of the purchase agreement. And to be honest with you, that was probably the majority of the worth value of the practice.

Q. Okay. So his contact of patients, you said occurred after you terminated Dr. Dupree?

A. That is affirmative.

Q. And I have the date that you terminated Dr. Dupree as March 16, 2022.

A. That is pretty accurate. I don't have the termination letter with me, but that sounds accurate.

Q. Okay. How long after you terminated Dr. Dupree did Dr. Toce first contact any of your patients?

A. How long after I terminated her, or how long was he contacting patients? I don't understand.

Q. I'll restate the question.

A. Okay.

Q. How long after you terminated Dr. Dupree did you first learn that Dr. Toce contacted one of your patients?

A. Probably about two to three weeks after.

Q. And that contact was then from somewhere between March 16, 2022 and two or three weeks thereafter?

A. That's affirmative.

Later on, when asked about the timeframe of when Dr. Toce allegedly spoke to patients with the intention of soliciting them, Dr. Llopis agreed it occurred from March 16, 2022, until Dr. Toce's death on July 7, 2022:

> Q. There's no other period of time that you got a phone call from a patient that said that Dr. Toce wanted them to move their business or suggested they move their business?
>
> A. No, not before March 16th.

Thus, even Dr. Llopis himself testified that the alleged breach of contract did not occur until March 16, 2022. The record also contains an affidavit from a former patient of Dr. Toce and Dr. Llopis, who attested that Dr. Toce called her on March 28, 2022, telling her that he and Dr. Dupree would like to keep her as a patient. Again, though, this evidence does not help the Llopises, as the phone call occurred more than two years after the sale. Simply put, there is no evidence that shows any alleged improper acts occurred prior to November 1, 2020. Therefore, the only result we can reach is an affirmation of the trial court's ruling.

Assignment of Error Number Two

In their second assignment of error, the Llopises claim it was manifest error when the trial court held there was no genuine issue of material fact regarding whether they defaulted on the $200,000.00 promissory note.

The contract provided that the Llopises, as Buyers, would make payments towards the $200,000.00 purchase price as follows:

> Mandatory payments shall in no event be less than $714 per month or an amount equal to 2/7 of 7.5% of the monthly collections from the dental practice business of Roberto Llopis, D.D.S., whichever amount

is greater with a final payment of the full balance due, principal and unpaid interest, on October 31, 2033.[2]

There is no dispute that the Llopises stopped payment on the $200,000.00 note in approximately March 2023. The Llopises justified nonpayment due to Dr. Toce's alleged breach of contract.

However, in light of our finding above, the Llopises' justification for nonpayment fails. The Llopises did not offer an alternative explanation that would justify nonpayment on the loan, nor did they attach any admissible evidence to their opposition to the motion for partial summary judgment to create a genuine issue of material fact.

What the evidence does show is that the parties executed a sale agreement and that the Llopises stopped payment on the note, with their last payment in February 2023. The Toces presented an affidavit executed by Allyson Toce Houston, as executor of Dr. Toce's succession, who attested that all amounts owed on the note, from March 1, 2023 through the present, are outstanding and owed. She attached an accounting of payments to her affidavit, which listed all payments received on the note and the remaining amount owed, including accrued interest, through April 2024. That amount is $143,883.81 and was the amount cast in favor of the Toces and against the Llopises by the trial court. Therefore, we affirm the trial court's judgment in relation to the $143,883.81 balance on the promissory note.

The trial court also awarded attorney's fees in the June 24, 2024 judgment, with the amount to be determined in a later-filed fee affidavit. As we have previously held, "[a]ttorney fees are allowable when provided for by statute or contract."

---

[2] The parties subsequently agreed to increase the monthly payments to $1,901.81 beginning in February 2020.

*Romero v. LaGrange*, 19-689, p. 11 (La.App. 3 Cir. 3/4/20), 297 So.3d 127, 135, *writ denied*, 20-1435 (La. 2/9/21), 310 So.3d 178; *see also Holt v. Ace Am. Ins. Co.*, 14-380 (La.App. 3 Cir. 10/1/14), 149 So.3d 886.

The promissory note states that the Llopises agree to pay attorney's fees incurred in the collection of the note:

> [I]n the event of any default in the payment of the principal sum hereinabove mentioned at the respective times herein specified for the payment therefor, the aforesaid Roberto Llopis, D.D.S. and Wendy Llopis further agree to pay all reasonable attorney fees incurred in the collection of this Note, or any portion thereof.

Given that the Llopises breached the contract by failing to pay the contractually agreed-upon payments on the promissory note, the Llopises are responsible for reasonable attorney's fees. The trial court was not incorrect in awarding such.[3]

Appellees' Answer to the Appeal

The Toces answered the appeal, asserting they are entitled to additional attorney's fees for work done on appeal. "Generally, when an award for attorney's fees is granted at the trial level, additional attorney's fees are proper for work done on appeal. This is to keep the appellate judgment consistent with the underlying judgment." *Wilczewski v. Brookshire Grocery Store*, 08-718, p. 18 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, 1226, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170; *see also Grand Pointe Homeowners Ass'n, Inc. v. Heymann*, 20-36 (La.App. 3 Cir. 11/12/20), 307 So.3d 285.

We have reviewed the record and award $5,000.00 to the Toces for work done on appeal.

---

[3] The amount of the attorney's fees awarded is not at issue in this appeal, as the amount awarded was set forth in a separate judgment not before us.

10

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. The judgment is amended to include an award of attorney's fees in the amount of $5,000.00 to Appellees. Costs of this appeal are assessed against Appellants, Roberto Llopis, DDS, Wendy Llopis, and Lafayette Comprehensive and Urgent Dental Care, LLC.

**AFFIRMED AS AMENDED.**